UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WOODY VINING,

        Plaintiff,                              Hon. Ellen S. Carmody

v.                                           Case No. 1:15-CV-124

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## **OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. On May 12, 2015, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #10).

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons articulated herein, the Commissioner's decision is **vacated and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 41 years of age on his alleged disability onset date. (Tr. 191). He successfully completed high school and worked previously as a tool and die maker and a tool and die supervisor. (Tr. 29-30). Plaintiff applied for benefits on February 8, 2012, alleging that he had been disabled since November 23, 2011, due to ruptured discs, herniated discs, and ankle problems. (Tr. 189-93, 212). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 135-88). On July 25, 2013, Plaintiff appeared before ALJ Kimberly Cromer with testimony being offered by Plaintiff, a vocational expert, and a medical expert. (Tr. 101-34). In a written decision dated September 5, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 16-31). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-5). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

4

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) degenerative disc disease of the lumbar spine, status-post three surgeries; (2) history of left ankle fracture; (3) history of bilateral meniscal tear of the knees; and (4) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 19-21).

Regarding Plaintiff's residual functional capacity, the ALJ found that Plaintiff retained the ability to perform sedentary work subject to the following limitations: (1) he can lift, carry, push, and pull 10 pounds occasionally and frequently; (2) during an 8-hour workday, he can sit for up to 2 hours at a time; (3) during an 8-hour workday, he can stand/walk for 30 minutes at a time and does not require an assistive device; (4) he can never climb ladders, ropes, or scaffolds; (5) he can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps/stairs; (6) he cannot work at unprotected heights; (7) he must avoid all work hazards; (8) he must avoid moderate exposure to uneven terrain; and (9) he cannot engage in commercial driving.  (Tr. 21).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard

requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 3,400 jobs in the state of Michigan, and approximately 692,000 jobs nationwide, which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 127-32). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The Treating Physician Doctrine**

In mid-July 2012, Physician's Assistant Paul Clouse and Dr. Maria Alvarez completed a report concerning Plaintiff's ability to function. (Tr. 388-89). The pair concluded that Plaintiff was more limited than the ALJ recognized. The ALJ, however, afforded limited weight to these opinions. (Tr. 28). Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting Dr. Alvarez's opinions is not supported by substantial evidence. The Court agrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must,

therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with

other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

In support of her decision to discount Dr. Alvarez's opinions, the ALJ cited: (1) a statement by Plaintiff that allegedly establishes that he was working full time following his disability onset date; (2) an alleged discrepancy in certain opinions expressed by Dr. Alvarez; and (3) a lack of evidence that Dr. Alvarez served as PA Clouse's supervising physician. (Tr. 28). These rationale are unpersuasive and do not constitute substantial evidence for the ALJ's assessment.

Plaintiff's alleged disability onset date is November 23, 2011. On this date, Plaintiff was examined by PA Clouse. (Tr. 336). Plaintiff reported that he was presently working "10-hour days, 6 days a week." (Tr. 336). PA Clouse noted that Plaintiff "has had 3 back surgeries so far" and was presently experiencing "significant peripheral neuropathy" and "lower extremity radiculopathy." (Tr. 336). PA Clouse made the decision to remove Plaintiff from work. (Tr. 336). Plaintiff was subsequently placed on disability status by his employer. (Tr. 208). The ALJ mistakenly attributed Plaintiff's comment that he was working "10-hour days, 6 days a week" to a December 2011 examination, after Plaintiff's alleged disability onset date. (Tr. 28). The ALJ interpreted this comment as establishing that Plaintiff continued to engage in full-time employment after the date he alleged an inability to work. The ALJ relied on this mistaken conclusion as support for her decision to discount Dr. Alvarez's opinions.[2]

The ALJ also cited to a discrepancy between a functional capacity report completed by PA Clouse on July 3, 2012, and the report completed by PA Clouse and Dr. Alvarez

---

[2] The ALJ also misinterpreted other evidence to support her conclusion that Plaintiff continued to work following his alleged disability onset date. Throughout a portion of 2012, Plaintiff received payments pursuant to an employer-sponsored disability policy. (Tr. 208). The ALJ mistakenly concluded that this income was the result of work activity by Plaintiff. (Tr. 18).

approximately two weeks later. (Tr. 370-71, 388-89). This is unpersuasive for two reasons. First, the differences between the two reports are quite minimal. More importantly, these two reports do not indicate a discrepancy in Dr. Alvarez's opinion, but instead suggests that she and PA Clouse had mildly divergent opinions regarding the extent of Plaintiff's functional limitations. To the extent that these two reports suggest a discrepancy in PA Clouse's opinions, such is irrelevant as Plaintiff's claim concerns whether the ALJ articulated sufficient reasons to afford limited weight to Dr. Alvarez's opinions, not PA Clouse's opinions.

Finally, the ALJ asserted that "there is no evidence" that Dr. Alvarez is PA Clouse's "supervising doctor." (Tr. 28). First, as Plaintiff correctly observes, the record contains a great many treatment records which indicate that Dr. Alvarez and PA Clouse worked in conjunction to diagnose and treat Plaintiff. More importantly, on the question whether the ALJ's decision to discount Dr. Alvarez's opinions is supported by substantial evidence, whether Dr. Alvarez supervised PA Clouse is simply not relevant. In sum, the ALJ failed to articulate good reasons to afford less than controlling weight to Dr. Alvarez's opinions.

**II.        The ALJ's RFC Determination is not Supported by Substantial Evidence**

The ALJ's RFC determination suffers from two related shortcomings. First, the ALJ's RFC determination is inconsistent with Dr. Alvarez's conclusions. Because the ALJ has failed to articulate a legally sufficient rationale for discounting Dr. Alvarez's opinions, such undermines the ALJ's RFC determination. Furthermore, as noted above, the ALJ erroneously concluded that Plaintiff continued to engage in full-time employment after the date he alleged an inability to work. This inaccurate assessment informed the ALJ's analysis of Plaintiff's residual

functional capacity. The Court finds that reliance on such inaccurate information concerning such a fundamental issue seriously undermines the ALJ's RFC determination. In sum, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such questions must accurately portray the claimant's impairments).

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Date: March 2, 2016                                  /s/ Ellen S. Carmody
                                                                                        ELLEN S. CARMODY
                                                                                        United States Magistrate Judge